1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TONY PROTOPAPPAS,

11              Petitioner,              No. CIV S-04-1435 FCD DAD P

12        vs.

13   MATTHEW C. KRAMER, Warden,

14              Respondent.              FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges that the decision of the California

18   Board of Parole Hearings (hereinafter "Board") to deny him parole at a hearing on September 19,

19   2000 violated his rights to due process and equal protection.  He also alleges that his Fourteenth

20   Amendment rights were violated because the Board disregarded regulations ensuring fair

21   suitability hearings and instead operated under a policy requiring that all murderers be found

22   unsuitable for parole.  Upon careful consideration of the record and the applicable law, the

23   undersigned will recommend that petitioner's application for habeas corpus relief be denied.

24                     PROCEDURAL BACKGROUND

25              On July 31, 1984, a Orange County Superior Court jury found petitioner, a

26   licensed dentist and oral surgeon, guilty of the second degree murder of three of his patients due

1

1  to the improper administration of general anesthesia and other improper medical treatments.

2  People v. Protopappas, 201 Cal. App.3d 152 (1988).  Petitioner was sentenced to three

3  concurrent terms of fifteen years-to-life in state prison.  (Answer, Ex. 2.)

4  On September 19, 2000, petitioner appeared before a Board panel for his third

5  parole suitability hearing.  (Answer, Ex. 2 at 6, 39.)  At that time, petitioner had served sixteen

6  years in prison.  (Pet. at 13.)  Petitioner waived his right to be present at the hearing, but was

7  represented by counsel.  (Answer, Ex. 2 at 6.)  Counsel stipulated that petitioner's procedural

8  rights had been met.  (Id. at 11.)  Counsel read petitioner's prepared statements to the Board.  (Id.

9  at 11-13, 24-29.)  The Board found petitioner unsuitable for parole at that time and deferred his

10  next parole hearing for a period of five years.  (Id. at 36.)

11  Petitioner challenged the Board's September 19, 2000 decision in two habeas

12  petitions filed in the Orange County Superior Court.  (Id. at 39, 49.)  Those petitions were denied

13  in two reasoned decisions both dated October 25, 2002.  (Id.)  Petitioner subsequently filed two

14  petitions for a writ of habeas corpus in the California Court of Appeal for the Fourth Appellate

15  District, which were summarily denied by orders dated April 10, 2003.  (Id. at 54, 55, 61.)  On

16  May 30, 2003, petitioner filed two petitions for a writ of habeas corpus in the California Supreme

17  Court.  (Id. at 56, 59.)  Those petitions were summarily denied by orders dated February 24, 2004

18  and March 24, 2004.  (Id. at 57, 60.)

19  ANALYSIS

20  I.  Standards of Review Applicable to Habeas Corpus Claims

21  A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

22  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

23  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

24  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

25  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

26  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

2

1   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

2   (1972).

3            This action is governed by the Antiterrorism and Effective Death Penalty Act of

4   1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

5   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

6   habeas corpus relief:

7              An application for a writ of habeas corpus on behalf of a
            person in custody pursuant to the judgment of a State court shall
8            not be granted with respect to any claim that was adjudicated on
            the merits in State court proceedings unless the adjudication of the
9            claim -

10             (1) resulted in a decision that was contrary to, or involved
            an unreasonable application of, clearly established Federal law, as
11            determined by the Supreme Court of the United States; or

12             (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
13            State court proceeding.

14   28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

15   Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

16            The court looks to the last reasoned state court decision as the basis for the state

17   court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

18   court reaches a decision on the merits but provides no reasoning to support its conclusion, a

19   federal habeas court independently reviews the record to determine whether habeas corpus relief

20   is available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado

21   v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not reached

22   the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's

23   deferential standard does not apply and a federal habeas court must review the claim de novo.

24   Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th

25   Cir. 2002).

26   /////

II.  Petitioner's Claims

Petitioner claims that the Board: (1) violated his right to due process when it failed to find him suitable for parole at the September 19, 2001 hearing; (2) violated his right to due process and equal protection when it deferred his next parole hearing for a period of five years; and (3) improperly relied on an invalid disciplinary conviction and an improper Mentally Disordered Offender (MDO) screening form in his central file to find him unsuitable for parole. He also claims that his right to due process was violated because the Board operated under an illegal policy requiring that all murderers be found unsuitable for parole.

   A.  Background

The Board commenced its September 19, 2000 decision finding petitioner unsuitable for parole by stating that the panel had reviewed "all of the information received from the public" and had concluded that "the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Answer, Ex. 2 at 31.)  The phrases "unreasonable risk of danger to society" and "a threat to public safety" are derived from § 3041(b) of the California Penal Code and § 2281(a) of Title 15 of the California Code of Regulations.  Pursuant to the Penal Code provision,

> [t]he panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

Cal. Penal Code § 3041(b).

The state regulation that governs parole suitability findings for life prisoners states as follows with regard to the statutory requirement of California Penal Code § 3041(b): "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

/////

4

society if released from prison." Cal. Code Regs. tit. 15, § 2281(a). The same regulation

requires the Board to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

Cal. Code Regs. tit. 15, § 2281(b).

The regulation identifies circumstances that tend to show suitability or

unsuitability for release. Id., § 2281(c) & (d). The following circumstances tend to show that a

prisoner is suitable for release: the prisoner has no juvenile record of assaulting others or

committing crimes with a potential of personal harm to victims; the prisoner has experienced

reasonably stable relationships with others; the prisoner has performed acts that tend to indicate

the presence of remorse or has given indications that he understands the nature and magnitude of

his offense; the prisoner committed his crime as the result of significant stress in his life; the

prisoner's criminal behavior resulted from having been victimized by battered women syndrome;

the prisoner lacks a significant history of violent crime; the prisoner's present age reduces the

probability of recidivism; the prisoner has made realistic plans for release or has developed

marketable skills that can be put to use upon release; institutional activities indicate an enhanced

ability to function within the law upon release. Id., § 2281(d).

The following circumstances tend to indicate unsuitability for release: the prisoner

committed the offense in an especially heinous, atrocious, or cruel manner; the prisoner had a

previous record of violence; the prisoner has an unstable social history; the prisoner's crime was

a sadistic sexual offense; the prisoner had a lengthy history of severe mental problems related to

the offense; the prisoner has engaged in serious misconduct in prison. Id., § 2281(c). Factors to

consider in deciding whether the prisoner's offense was committed in an especially heinous,

1    atrocious, or cruel manner include: multiple victims were attacked, injured, or killed in the same

2    or separate incidents; the offense was carried out in a dispassionate and calculated manner, such

3    as an execution-style murder; the victim was abused, defiled or mutilated during or after the

4    offense; the offense was carried out in a manner that demonstrated an exceptionally callous

5    disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation

6    to the offense.  Cal. Code Regs., tit. 15, § 2281(c)(1)(A) - (E).  Under current California law, the

7    Board is apparently not required to refer to sentencing matrixes or compare the prisoner's crime

8    to others of the same type in deciding whether the crime was especially cruel or exceptionally

9    callous but may find the crime especially cruel or exceptionally callous if there was violence or

10   viciousness beyond what was "minimally necessary" for a conviction.  In re Dannenberg, 34 Cal.

11   4th 1061, 1095 (2005).

12           In addressing the factors it considered in reaching its 2000 decision that petitioner

13   was unsuitable for parole, the Board stated as follows:

14           PRESIDING COMMISSIONER BORDONARO:

15           Okay.  We're back on the record.  Everyone who was previously in
             the room has returned.  The Panel has reviewed all of the
16           information received from the public and relied on the following
             circumstances in unanimously concluding that the prisoner is not
17           suitable for parole and would pose an unreasonable risk of danger
             to society or a threat to public safety if released from prison.  The
18           commitment offense, there were multiple victims attacked and
             killed in separate incidences.  The offense was carried out in a
19           dispassionate manner.  The offense was carried out in a manner
             which demonstrates an exceptionally callous disregard for human
20           suffering and life.  And the murder of the victim did not deter the
             prisoner from later committing the other two murders.  These
21           conclusions were drawn from the Statement of Facts wherein the
             prisoner had murdered three victims on 9/30/1982, Kim
22           Andreassen, who was, I believe, 23 – 23 years old, on 2/8/1983,
             Patricia Craven, who was 13 years old, and on 2/11/1983, Cathryn
23           Jones, who was 31 years old.  All three of these victims were
             patients of the inmate, who was a dentist.  They had gone in for
24           oral surgery.  And because of the business practices of the doctor,
             all three of these victims were killed by their anesthesia
25           administered to them by the doctor.  Institutionally, the prisoner
             has programmed in a limited manner while incarcerated.  He's
26           failed to develop a marketable skill that could be put to use upon

                                               6

release.  He's failed to upgrade vocationally as previously
recommended by the Board.  He has not sufficiently participated in
beneficial self help and therapy programs.  Psychologically, the
inmate had actually refused in his last two psychological reports,
one 7/18 of 2000, Dr. R. Jordan, is non-existent.  Again, the inmate
refused (inaudible) in 1996.  And the only psychological report the
Panel has to rely on is 1992 for the clinical psychological [sic]
White, W-H-I-T-E, who writes in the psychological conclusions
that if the inmate were released to the community at this time there
remains a risk to the public, that this inmate has not dealt with his
addiction issues and he must maintain complete sobriety.
Obviously, this is a major issue as it has also led to – possibly led
to one of the causative factors in committing these life crimes.  He
has not attended AA or NA that we can tell, and so does not have
the tools to deal with his addiction.  Under parole plans, he does
not have acceptable employment plans, and he does not yet have a
marketable skill.  The Hearing Panel notes that responses to PC
3042 notices indicate opposition to a finding of parole suitability,
specifically from the District Attorney of Orange County.  The
Hearing Panel also notes that Correctional Counselor Noel,
N-O-E-L, writes that this inmate would pose a moderate degree of
threat if released to the public at this time.  So, the Panel makes the
following findings.  That the prisoner does need therapy in order to
face, discuss, understand and cope with stress in a non-destructive
manner.  Until progress is made, the prisoner continues to be
unpredictable and a threat to others.  And also, the prisoner needs
additional time in order to fully understand and deal with the
causative factors which led to the commitment of the life crime.
Therapy in a controlled setting is needed, but motivation and
amenability are questionable.  In fact, they may be non-existent.
Nevertheless, the prisoner should be commended for his good work
reports.  He's anywhere from satisfactory to exceptional work
reports.  For being disciplinary free since 1987, assuming – that
would be assuming that the recent 5/16/2000 pending 115 for filing
false statements is adjudicated in his favor.  Otherwise, that
statement would have to be retracted as far as his disciplinaries.
However, these positive aspects of his behavior do not outweigh
factors of unsuitability.  In a separate decision, the Hearing Panel
finds that the prisoner has been convicted of murder, and it's not
reasonable to expect that parole would be granted at a hearing
during the next five years.  The specific reasons for this finding are
as follows.  Firstly, the commitment offense.  It was carried out in
an especially cruel manner.  Specifically, he murdered three of his
patients by his business practices, which during trial had been
exposed as dangerous.  Obviously dangerous enough to kill three
innocent victims that entrusted him with their lives during general
anesthesia procedures.  Multiple victims were killed in separate
incidents.  And this offense was carried out in a manner which
demonstrates exceptionally callous disregard for human suffering
and life.  The most recent – Secondly, the most recent
psychological report dated 8/6/1992, although it is an older report,

1     it's the only one we have to rely on, authored by W.J. White,
    indicates a need for a longer period of observation and evaluation
2     and treatment.  And the prisoner has also not completed the
    necessary programming which is essential to his adjustment, and
3     needs additional time to gain that programming.  He has failed to
    participate in the self help and therapy programming.  He – in AA
4     and NA in particular.  He has also failed to complete a vocation.
    I'd also like to note that the inmate stipulated in his last hearing
5     that he needed additional time for vocational training, and he has
    yet to complete any vocation whatsoever.  And because of
6     (inaudible) needed a longer period of observation and evaluation of
    the prisoner is required before the Board can find that the prisoner
7     is suitable for parole.  In the next five years the Panel recommends
    that the prisoner remain disciplinary free, that, as it's available, to
8     upgrade vocationally and educationally, and also if it's available, to
    participate in self help and therapy programming, and also to
9     cooperate with clinicians in the completion of clinical evaluation.
    The Hearing Panel also requests that CDC complete a clinical
10     evaluation based upon the fact that we don't have a recent
    evaluation since 1992.  In the new full evaluation, the Panel would
11     request that the clinician specifically address the prisoner's
    violence potential in a free community, the significance of alcohol
12     and drugs that are related to the commitment offense, and estimate
    the prisoner's ability to refrain from use of the same when released,
13     and also to explore the extent to which the prisoner has explored
    the commitment offense and come to terms with the underlying
14     causes, and the need for any further therapy programs while
    incarcerated.  That will conclude the reading of the decision.

15

16 (Answer, Ex. 2 at 31-36.)

17     B. Due Process

18         Petitioner claims that the failure of the Board to find him suitable for parole at the

19 parole suitability hearing held on September 29, 2000 deprived him of his liberty without due

20 process of law.  (Pet. at 6-23.)  The Orange County Superior Court denied petitioner relief on his

21 due process claims in a lengthy decision on the merits, concluding that the Board's 2000 decision

22 was supported by sufficient evidence, was not an abuse of discretion and did not violate

23 /////

24 /////

25 /////

26 /////

petitioner's right to due process.[1]  (Answer, Ex. 2 at 4-10.)  For the reasons explained below, the Superior Court's decision is not contrary to or an unreasonable application of federal law and should not be set aside.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A person alleging due process violations must first demonstrate that he or she was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest."  McQuillion, 306 F.3d at 901 (quoting Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners who have not already been granted a parole date.  Hayward v. Marshall, 512 F.3d 536, 542 (9th Cir. 2008); Sass v. Cal. Bd.

---

[1]  In its decision, the Orange County Superior Court stated:

> The petition and the traverse were each very lengthy and were divided into multiple parts.  The court has thoroughly reviewed and given due consideration to all of Petitioner's arguments. Nevertheless, in the interests of judicial economy, the court has condensed its order to respond to the essence of Petitioner's concerns.

(Answer, Ex. 2 at 40.)  This court has done the same.

1  of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th

2  Cir. 2003); McQuillion, 306 F.3d at 903.  Accordingly, this court must examine whether the

3  deprivation of petitioner's liberty interest in this case lacked adequate procedural protections and

4  therefore violated due process.

5      Because "parole-related decisions are not part of the criminal prosecution, the full

6  panoply of rights due a defendant in such a proceeding is not constitutionally mandated."

7  Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and

8  citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due

9  process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded

10 notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the

11 reasons for the denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v.

12 Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving

13 parole issues).  Violation of state mandated procedures will constitute a due process violation

14 only if the violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

15      In California, the setting of a parole date for a state prisoner is conditioned on a

16 finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The

17 requirements of due process in the parole suitability setting are satisfied "if some evidence

18 supports the decision."  McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S.

19 445, 456 (1985)); Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v. Estelle,

20 974 F.2d 1132, 1134 (9th Cir. 1992)).  For purposes of AEDPA, Hill's "some evidence" standard

21 is "clearly established" federal law.  Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at 456).  "The

22 'some evidence' standard is minimally stringent," and a decision will be upheld if there is any

23 evidence in the record that could support the conclusion reached by the factfinder.  Powell, 33

24 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v. McCarthy,

25 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's decision

26 must have some indicia of reliability."  Jancsek, 833 F.2d at 1390.  See also Perveler, 974 F.2d at

1134.  Determining whether the "some evidence" standard is satisfied does not require

examination of the entire record, independent assessment of the credibility of witnesses, or the

weighing of evidence.  Toussaint, 801 F.2d at 1105.  The question is whether there is any reliable

evidence in the record that could support the conclusion reached.  Id.

        In recent years the Ninth Circuit Court of Appeals has been called upon to address

the issues raised by petitions such as that now pending before this court in four significant cases,

each of which will be discussed below.  First, in Biggs, the Ninth Circuit Court of Appeals

recognized that a continued reliance on an unchanging factor such as the circumstances of the

offense could at some point result in a due process violation.  That holding has been

acknowledged as representing the law of the circuit.  Irons v. Carey, 505 F.3d 846, 853 (9th Cir.

2007); Sass, 461 F.3d at 1129.  While the court in Biggs rejected several of the reasons given by

the Board for finding the petitioner unsuitable for parole, it upheld three:  (1) petitioner's

commitment offense involved the murder of a witness; (2) the murder was carried out in a

manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner

could benefit from therapy.  Biggs, 334 F.3d at 913.  However, the court in Biggs cautioned that

continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct

prior to committing that offense in denying parole could, at some point, violate due process.  In

this regard, the court observed:

> As in the present instance, the parole board's sole supportable
> reliance on the gravity of the offense and conduct prior to
> imprisonment to justify denial of parole can be initially justified as
> fulfilling the requirements set forth by state law.  Over time,
> however, should Biggs continue to demonstrate exemplary
> behavior and evidence of rehabilitation, denying him a parole date
> simply because of the nature of his offense would raise serious
> questions involving his liberty interest in parole.

Id. at 916.  The court also stated that "[a] continued reliance in the future on an unchanging

factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the

/////

1  rehabilitative goals espoused by the prison system and could result in a due process violation."

2  Id. at 917.

3          In Sass, the Board found the petitioner unsuitable for parole at his third suitability

4  hearing based on the gravity of his offenses of conviction in combination with his prior offenses.

5  461 F.3d at 1126.  Citing Biggs, the petitioner in Sass contended that reliance on these

6  unchanging factors violated due process.  The court disagreed, concluding that these factors

7  amounted to "some evidence" to support the Board's determination.  Id. at 1129.  The court

8  provided the following explanation for its holding:

9          While upholding an unsuitability determination based on these
           same factors, we previously acknowledged that "continued reliance
10         in the future on an unchanging factor, the circumstance of the
           offense and conduct prior to imprisonment, runs contrary to the
11         rehabilitative goals espoused by the prison system and could result
           in a due process violation."  Biggs, 334 F.3d at 917 (emphasis
12         added).  Under AEDPA it is not our function to speculate about
           how future parole hearings could proceed.  Cf. id.  The evidence of
13         Sass' prior offenses and the gravity of his convicted offenses
           constitute some evidence to support the Board's decision.
14         Consequently, the state court decisions upholding the denials were
           neither contrary to, nor did they involve an unreasonable
15         application of, clearly established Federal law as determined by the
           Supreme Court of the United States.  28 U.S.C. § 2254(d).

16

17  Id.

18          In Irons the Ninth Circuit sought to harmonize the holdings in Biggs and Sass,

19  stating as follows:

20         Because the murder Sass committed was less callous and cruel than
           the one committed by Irons, and because Sass was likewise denied
21         parole in spite of exemplary conduct in prison and evidence of
           rehabilitation, our decision in Sass precludes us from accepting
22         Iron's due process argument or otherwise affirming the district
           court's grant of relief.

23
           We note that in all the cases in which we have held that a parole
24         board's decision to deem a prisoner unsuitable for parole solely on
           the basis of his commitment offense comports with due process,
25         the decision was made before the inmate had served the minimum
           number of years required by his sentence. Specifically, in Biggs,
26         Sass, and here, the petitioners had not served the minimum number

of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 461 F.3d 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

Furthermore, we note that in Sass and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. Biggs, 334 F.3d at 917.

Irons, 505 F.3d at 664-65.

Finally, and most recently, in Hayward, the Ninth Circuit determined that, under the "unusual circumstances" of that case, the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society. Hayward, 512 F.3d at 546-47.  The "unusual circumstances" present in that case were the following:  (1) the petitioner had served twenty-seven years in prison on a sentence of fifteen years-to-life; (2) the petitioner was sixty-four years old; (3) after eleven parole suitability hearings, the Board had twice recommended that the petitioner receive a parole date; (4) former California Governor Gray Davis reversed the Board's second grant of parole based on seven factors, four of which were unsupported by the record and three of which were based on unchanging circumstances; (5) the provocation for petitioner's crime was the attempted rape of the petitioner's girlfriend (and future wife) by the victim; (6) the petitioner had solid parole plans, including several offers of employment and a place to live; and (7) the petitioner had an "exemplary" prison record for most of his period of incarceration, with his last major disciplinary

/////

13

1   violation in 1989 and a minor disciplinary infraction in 1997.  Id.  Against this background, the

2   Ninth Circuit explained:

3               In light of the extraordinary circumstances of this case – given the
            provocation for Hayward's violent crime in 1978, his incarceration
4               for almost thirty years with his positive prison record in recent
            times, and the favorable discretionary decisions of the Board in
5               successive hearings, which were reversed by the Governor on
            factual premises most of which were not documented in the record
6               – we conclude that the unchanging factor of the gravity of
            Hayward's commitment offense had no predictive value regarding
7               his suitability for parole.  In the circumstances of this case, the
            Governor violated Hayward's due process rights by relying on that
8               stale and static factor in reversing his parole grant.

9   Id.

10              After taking into consideration the Ninth Circuit decisions in Biggs, Sass, Irons,

11  and Hayward, and for the reasons set forth below, this court concludes that petitioner is not

12  entitled to federal habeas relief with respect to his due process challenge to the September 19,

13  2000 Board decision denying him parole.

14              The Board's decision that petitioner was unsuitable for parole and that his release

15  would unreasonably endanger public safety was supported by "some evidence" that bore "indicia

16  of reliability."  Jancsek, 833 F.2d at 1390; Hayward, 512 F.3d at 543.  Specifically, in denying

17  petitioner a parole date the panel based its decision in part on the fact that petitioner killed

18  multiple victims in separate incidents and that the offense was "carried out in a manner which

19  demonstrates an exceptionally callous disregard for human suffering and life."  (Answer, Ex. 2 at

20  31.)  Those conclusions are supported by the record of petitioner's crimes.  As explained by the

21  Orange County Superior Court in denying petitioner habeas relief:

22              In Petitioner's case, the deaths occurred while he was a practicing
            dentist.  He ran a very busy office.  He was the only person in his
23              office licensed to administer anesthesia.  He sedated more than one
            patient at a time, and then absented himself from the individual if
24              necessary to treat other patients, leaving an unqualified dentist or
            assistant in charge of the sedated patient.  It was in this setting that
25              three people died.  One of the victims was 13 years old.

26  /////

14

> There were multiple victims.  Further, Petitioner continued the same style of practice after the first death.  That scenario provides *some* evidentiary support for the BPT conclusion that the offenses were carried out in a dispassionate and calculated manner, and demonstrated an exceptionally callous disregard for human suffering.  That is all that is required.  (In re Powell, supra, 45 Cal.3d at p. 902.)

(Id. at 45.)

The Board further relied on a 1992 psychological report, which concluded that "if [petitioner] were released to the community at this time there remains a risk to the public, that this inmate has not dealt with his addiction issues and he must maintain complete sobriety." (Id. at 32.)[2]  The Board noted that petitioner had "not attended AA or NA," even though alcohol addiction "is a major issue as it has also led to – possibly led to one of the causative factors in committing these life crimes." (Answer, Ex. 2 at 32.)[3]  The Board also relied on remarks made by a correctional counselor in a 2000 life prisoner report that petitioner would "pose a moderate degree of risk to the public at this time, if released." (Id. at 33; Attach 1 at 122.)  The Board noted that at his most recent suitability hearing, petitioner stipulated that he needed additional time for vocational training, but that he had "yet to complete any vocation whatsoever." (Answer, Ex. 2 at 35.)  The record reflects that there was some reliable evidence before the Board to support each of these factors and upon which the Board based its parole decision.  These factors, in conjunction with the extreme seriousness of petitioner's crimes of conviction,

---

[2]  The Board was forced to rely on an old report because petitioner apparently refused to participate or cooperate in any recent psychiatric evaluations.  (Id.)  Petitioner asserts that "by choosing to remain silent by not cooperating with CDC psychologists to prepare a psychological evaluation report was affirmative evidence that petitioner did NOT suffer from any major/severe mental illness." (Pet., separately filed Attachment 1, points and authorities in support of "Petition for Writ of Habeas Corpus in the Supreme Court of California," (hereinafter Attach. 1) at 112.)  Whatever the reasons for petitioner's refusal to submit to a psychiatric evaluation since 1992, the Board was entitled to rely on the 1992 report in support of its decision finding him unsuitable for parole.

[3]  Earlier in the proceeding, a Board commissioner noted that petitioner had admitted he had "a substance abuse problem with cocaine, opiates and alcohol at the time of his arrest." (Id. at 18.)

15

1  constitute "some evidence" supporting the Board's decision to deny petitioner a parole date.

2  Sass, 469 F.3d at 1129.  Evidence relating to these same factors also provides "some evidence"

3  that petitioner's release would unreasonably endanger public safety.  Hayward, 512 F.3d at 543

4  ("[t]he test is not whether some evidence supports the reasons the Governor cites for denying

5  parole, but whether some evidence indicates a parolee's release unreasonably endangers public

6  safety.") (quoting In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

7          Petitioner argues that there are factors favoring his release on parole which

8  outweigh the factors relied upon to deny him parole and that the BPT must therefore find him

9  suitable for parole.  Petitioner also attempts to minimize all of the reasons expressed by the

10  Board for its decision to deny him a parole date.  As discussed above, federal due process

11  requires only that the Board's decision be based on "some evidence" bearing "indicia of

12  reliability" or, more specifically, that there be "some evidence" that "indicates a parolee's release

13  unreasonably endangers public safety."  Hayward, 512 F.3d at 543.  This is true even though

14  there may be other factors or evidence favoring release.  For the reasons described above, the

15  Board's 2000 decision that petitioner was unsuitable for parole and would pose a danger to

16  society if released meets that minimally stringent test.

17          The court also notes that this case does not involve the "unique circumstances"

18  present in the Hayward case.  Unlike the petitioner in Hayward, here petitioner had just barely

19  served the minimum number of years in prison required by his sentence at the time of the 2000

20  suitability hearing.  In contrast, the petitioner in  Hayward had served twenty-seven years in

21  prison on a sentence of fifteen years-to-life when the Governor reversed a favorable suitability

22  decision.  Further, the Board has never recommended that the petitioner in this case receive a

23  parole date.  In Hayward, the Board had twice recommended that the petitioner receive a parole

24  date before the Governor reversed those decisions and found him unsuitable for parole.  Finally,

25  the provocation for petitioner's crime was nonexistent, whereas the provocation for the crime

26  /////

1  committed by the petitioner in <u>Hayward</u> was substantial.  Because of these significant

2  differences, the <u>Hayward</u> decision does not dictate the granting of habeas relief at this time.

3        This case has not yet reached the point where a continued reliance on an

4  unchanging factor such as the circumstances of the offense in denying parole has resulted in a

5  due process violation.  Accordingly, petitioner is not entitled to relief on his claim that the

6  Board's failure to find him suitable for parole at the September 19, 2000 parole suitability

7  hearing violated his right to due process.  <u>Sass</u>, 461 F.3d at 1129; <u>Irons</u>, 505 F.3d at 664-65.[4]

8      C.  <u>Improper Use of Disciplinary Conviction and Mentally Disordered Offender</u>

9  <u>Screening Form to Find Petitioner Unsuitable for Parole</u>

10        Petitioner claims that the Board improperly relied on an erroneous 1986 prison

11  disciplinary conviction for possession of two marijuana seeds in finding him unsuitable for

12  parole in 2000.  (Pet. at 27, 30.)  Petitioner raises numerous challenges to his guilty finding on

13  the disciplinary charge.  (<u>Id.</u> at 27-30.)

14

---

15     [4]  Petitioner presents several state law claims throughout his petition.  For instance,

16  petitioner contends that the Board's decision denying him a parole date has the effect of requiring him to serve a sentence longer than that prescribed for "robbers and murderers [or other dentists

17  who also incurred anesthesia related dental patient deaths.]"  (Pet. at 17.)  In support of his claim in this regard, petitioner refers the court to California Code Regs. tit. 15 § 2403, which sets out a

18  matrix of base terms for second degree murder ("the matrix").  (<u>Id.</u> at 15-16.)  Petitioner alleges that the Board must ensure that his sentence falls within this matrix and must consider other

19  offenses of similar gravity and magnitude in setting a parole term.  (<u>Id.</u> at 13-16.)  Petitioner also claims that California Penal Code § 3041 requires the Board to grant him a parole date because

20  of its direction that one year prior to an inmate's minimum eligible parole date, a Board panel shall meet with the inmate and "shall normally" set a parole release date.  (<u>Id.</u> at 11-12; Traverse

21  at 50.)  In addition, petitioner argues that the Board's failure to find him suitable for parole violated various provisions of state law.  Many of petitioner's arguments based on state law have

22  been rejected by the California Supreme Court in <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1084, 1098 (2005) (holding that the Board is not required to refer to its sentencing matrices or to compare

23  other crimes of the same type in deciding whether a prisoner is suitable for parole).  More importantly for purposes of this federal habeas corpus action, petitioner has cited no federal

24  authority for the proposition that the Due Process Clause requires a state parole board to either set a parole date where the board members believe a prisoner poses an unreasonable risk of

25  danger to society, engage in a comparative analysis before denying parole suitability, or set a parole date within a state's "matrix."  In short, petitioner's arguments that the state court has

26  erred in applying state law in determining his release date are not cognizable in this federal habeas corpus proceeding.  <u>Estelle</u>, 502 U.S. at 67-68.

The Orange County Superior Court denied petitioner's claim in this regard on the grounds that the Board did not mention or rely on the disciplinary conviction when it explained the reasons for its unfavorable suitability determination.  (Answer, Ex. 2 at 51.)  The court explained:

> There is no evidence, however, that the BPT relied on the 1986 rules violation in making its determination.  On the contrary, the BPT stated it was relying on the "life crime" and Petitioner's "incomplete self-help and therapy programming."  When the BPT Appeals Unit affirmed the decision, it quoted the above language.
>
> Petitioner does not, therefore, meet his burden of establishing a basis for relief, because there is no showing the 1986 finding played any role in the BPT decision.

(Id.)

The record of the September 19, 2000 parole suitability hearing substantiates the Superior Court's finding in this respect.  (Id. at 31-36.)  The Board did not mention petitioner's 1986 disciplinary conviction as a negative factor in its decision finding him unsuitable for parole.  On the contrary, petitioner was complimented for being "disciplinary free since 1987."  (Id. at 33.)  In other words, it appears that petitioner's long record of disciplinary-free incarceration was deemed a point in his favor.[5]

Petitioner argues that the Board could not properly rely on the 1986 disciplinary conviction to find him unsuitable for parole because he was denied his right to due process at the disciplinary hearing.  (Pet. at 27-30.)  Assuming arguendo that the Board relied on the 1986 disciplinary conviction in finding petitioner unsuitable for parole, petitioner does not have a

---

[5]  In the traverse, petitioner notes that Deputy Commissioner Lushbough mentioned his two disciplinary convictions at the beginning of the 2000 suitability hearing.  (Traverse at 46; Answer, Ex. 2 at 18.)  Petitioner argues that, because the Board is required to consider "all relevant and reliable information" in determining suitability for parole, "without doubt, these two disciplinary infractions entered into the Board's parole suitability deliberations when they denied Petitioner parole."  (Traverse at 46.)  Contrary to petitioner's speculation in this regard, the Board did not consider his disciplinary convictions to be a factor indicating unsuitability for release.  (Answer, Ex. 2 at 31-36.)  On the contrary, as explained above, petitioner's thirteen year period of disciplinary free incarceration was deemed a factor tending to show his suitability for release on parole.

1  federal due process right to a re-evaluation of the merits of a prison disciplinary conviction at a

2  parole hearing.  The Board was entitled to rely on all relevant evidence in the record, including

3  the fact of a disciplinary conviction, in finding petitioner unsuitable for parole.  Cal. Code Regs.

4  tit. 15, § 2281.  For these reasons, petitioner's claim that his due process rights were violated

5  when the Board relied on the disciplinary conviction in reaching its decision lacks a

6  factual basis and should be rejected in any event.

7         Petitioner also claims that the Board violated his due process rights when it relied

8  on a Mentally Disordered Offender (MDO) screening form contained in his central file to find

9  him unsuitable for parole.  (Pet. at 30.)  Petitioner explains that the form was false and erroneous

10  and was improperly placed in his central file.  (Id. at 30-31.)  Petitioner raised this claim for the

11  first time in a petition for writ of habeas corpus filed in the California Supreme Court.  (Id.)  That

12  petition was summarily denied.  (Answer, Ex. 2 at 38.)

13         As with the claim addressed above, petitioner has failed to demonstrate a factual

14  basis for his claim regarding the screening form.  The Board did not rely on the MDO screening

15  form in announcing its decision finding petitioner unsuitable for parole, nor did it mention the

16  form at any other time during the hearing.  Petitioner's allegation that the Board must have

17  factored the form into its decision because it was required to consider "all relevant and reliable

18  information" is based on pure speculation and is not supported by the record before this court.

19  For these reasons, petitioner is not entitled to relief on this claim.

20         D.  Deferral of Parole Consideration for Five Years

21         Petitioner also claims the 2000 Board panel violated state law and his Fourteenth

22  Amendment rights to due process and equal protection when it deferred his next parole

23  consideration hearing for five years.  (Pet. at 26-27; see also Attach. 1 at 9-14.)

24         The California Superior Court rejected petitioner's claim in this regard, reasoning

25  as  follows:

26  /////

19

Petitioner argues that he was denied due process and equal protection because Penal Code section 3041.5, subdivision (b)(2)(B), which allows the BPT to delay the next hearing for up to five years if the prisoner has been convicted of murder, does not apply to his case. Petitioner relies on a footnote in <u>CDC v. Morales</u> (1995) 514 U.S. 499 which indicates that the above section only applies to offenses committed before July 1, 1997 or on or after January 1, 1991. (<u>Id.</u> at p. 503.) Petitioner's offenses were committed in 1982 and 1983. He therefore contends the five-year rule does not apply to him, and the BPT ignores the statute, case law, and its own 1994 decision. (In 1994, the BPT reversed itself in response to Petitioner's administrative appeal, stating that section 3041.5 did not apply to Petitioner's crimes, and granted a parole hearing in three years rather than five.)

Petitioner fails to state a prima facie case for relief on this basis, for two reasons. First, Penal Code section 3041.5, subdivision (b)(2)(B) places into the statutory scheme a *protection* for Petitioner, and sets an *outside* limit of five years. Therefore its application to Petitioner would inure to his benefit. Second, there is abundant authority establishing the BPT's broad discretion to grant or deny parole, including the time frames for hearings. (citations omitted.)

(Answer, Ex. 2 at 41.)

Petitioner's claim in this regard is based mainly on state law. As noted above, federal habeas corpus relief does not lie for a violation of state law. <u>Estelle</u>, 502 U.S. at 67-68. Petitioner has cited no federal authority for the proposition that a due process violation automatically results if a state parole board defers parole suitability hearings beyond the time set forth in state regulations. <u>Cf.</u> <u>Garner v. Jones</u>, 529 U.S. 244, 251-52 (2000) (retroactive application of Board's amended rule, changing frequency of required reconsideration hearings for inmates serving life sentences from every three years to every eight years, did not necessarily violate Ex Post Facto Clause); <u>California Dept. of Corrections v. Morales</u>, 514 U.S. 499, 501 (1995) (California statute amending parole procedures to allow the Board to decrease the frequency of parole suitability hearings under certain circumstances did not violate Ex Post Facto Clause as applied to petitioner who was convicted prior to the amendment). Even if the Board lacked authority under state regulations to continue petitioner's next parole suitability hearing for five years, a violation of state mandated procedures will constitute a due process violation only if

1   the violation brings about a fundamentally unfair result.  Estelle, 502 U.S. at 65.  Under the

2   circumstances of this case, the Board's decision to defer petitioner's next parole consideration

3   hearing for a period of five years was not fundamentally unfair.  Accordingly, petitioner is not

4   entitled to relief on this due process claim.

5          Petitioner has also failed to demonstrate that his right to equal protection was

6   violated when his next parole suitability hearing was deferred for five years.  A petitioner raising

7   an equal protection claim in the parole context must demonstrate that he was treated differently

8   from other similarly situated prisoners and that the Board lacked a rational basis for its decision.

9   McGinnis v. Royster, 410 U.S. 263, 269-70 (1973); McQueary v. Blodgett, 924 F.2d 829, 835

10  (9th Cir. 1991).  Petitioner has failed to do show that any other inmate who was similarly situated

11  to him was granted subsequent parole suitability hearings within less than five years after being

12  found unsuitable for parole.  Petitioner has also failed to demonstrate that the Board violated his

13  equal protection rights by applying a different suitability standard to him.  Accordingly,

14  petitioner is not entitled to relief on his claim that his equal protection rights were violated by the

15  Board's deferral of his next suitability hearing for five years.

16      E.  No-Parole Policy

17          Petitioner claims that he was denied parole as a result of the Board's application

18  of "no parole policy" in effect during the administrations of former Governors Pete Wilson and

19  Gray Davis for prisoners sentenced to an indeterminate life term. (Pet. at 24.)   Petitioner argues:

20          Accordingly, petitioner's September 19, 2000 BPT hearing was a
            sham pro forma hearing, with biased panel members, who's
21          decision was made prior to the BPT hearing and no matter what
            evidence petitioner presented in support of his release on parole,
22          the parole panel would never grant petitioner a parole release date,
            in violation of petitioner's substantive due process rights.
23

24  (Id. at 25.)  In support of this claim, petitioner has offered argument and documentary evidence

25  attempting to show that invalid parole policies and practices existed under former California

26  Governors Wilson and Davis.  (Id. at 24-25.)

1        The parole denial challenged in this case occurred when Gray Davis was

2   Governor of California.  The evidence submitted by petitioner demonstrates that former

3   Governor Davis vetoed parole recommendations for virtually every prisoner convicted of murder,

4   with rare exceptions.  The Ninth Circuit Court of Appeal has acknowledged that California

5   inmates have a due process right to parole consideration by neutral decision-makers.  See

6   O'Bremski v. Maas, 915 F.2d 418, 422 (9th Cir. 1990) (an inmate is "entitled to have his release

7   date considered by a Board that [is] free from bias or prejudice").  Accordingly, parole board

8   officials owe a duty to potential parolees "to render impartial decisions in cases and controversies

9   that excite strong feelings because the litigant's liberty is at stake."  Id. (quoting Sellars v.

10  Procunier, 641 F.2d 1295, 1303 (9th Cir. 1981)).  Indeed, "a fair trial in a fair tribunal is a basic

11  requirement of due process."  In re Murchison, 349 U.S. 133, 136 (1955).

12       Based on the authorities cited above, petitioner is correct that he was entitled to

13  have his release date considered by a Board that was free of bias or prejudice.  However, even

14  assuming arguendo that petitioner was found unsuitable for parole based on a "no parole" policy

15  for life prisoners, petitioner has failed to show prejudice.  Respondent has submitted evidence

16  that petitioner had another parole suitability hearing on January 19, 2006, at which he was again

17  found unsuitable for parole.  (See "Response to Court Order" filed April 23, 2008).  Neither Pete

18  Wilson nor Gray Davis were the Governor of California at the time of the January 19, 2006

19  suitability hearing, and petitioner has offered no evidence suggesting that the Board was

20  operating under a no-parole policy for life prisoners after Governor Davis left office.  Therefore,

21  petitioner has already received all the relief to which he would be entitled with respect to this

22  claim: a new parole hearing before an unbiased Board panel.  Under these circumstances,

23  petitioner has failed to establish that the outcome of a new suitability hearing would have

24  changed before a different panel.  Accordingly, petitioner is not entitled to relief on this claim.

25  See O'Bremski, 915 F.2d at 423 (parolee failed to establish prejudice where a neutral parole

26  panel at a new hearing would reach the same outcome).

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 20, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
protopappas1435.hc

23